# KENDALL v. SAMUEL McINTYRE INV. CO.

.No. 3701.   Decided December 19, 1921.   (203 Pac. 653.)

1. EVIDENCE—EVIDENCE OF VALUE OF CROPS AT NEAREST MARKET HELD SUFFICIENT TO SUSTAIN VERDICT FOR INJURY BY CATTLE. In an action for damages caused by defendant's cattle, wherein plaintiff stated, in regard to the value of the crops destroyed, what the market value was at the nearest market, such evidence tended to prove the market value, and, where it was not controverted, was sufficient to sustain verdict.

2. ANIMALS—INSTRUCTION ON DAMAGES TO GROWING CROPS PROPER. In an action for damages caused by cattle trespassing on growing crops, an instruction that the measure of damages was the difference between the market value of the crops before and after the damages were done, and that .this might be computed by taking into account the market value that the entire crop would have had at maturity if no injury thereto had been done, and deducting therefrom the entire market value of the crop at maturity in .its alleged injured state, and the difference, if any, would be the damages, was proper.[1]

3. ANIMALS—INSTRUCTION ON DAMAGES TO HARVESTED CROPS PROPER. In an action for damages caused by cattle trespassing on harvested crops, an instruction that the measure of damages to crops severed and placed in stacks was the difference between the market value of the crops in the stacks before the damage was done and the amount that, with reasonable diligence, could have been saved from the stacks after the damage, and to ascertain the difference to consider what the crop would have brought in open seasonable market and from that amount to deduct what was saved or what could have been saved, and from the difference to deduct the cost and expense of threshing and marketing, was proper.

Appeal from District Court, Third District, Salt Lake County; *Ephraim Hanson*, Judge.

Action by Joseph Kendall against the Samuel McIntyre Investment Company. From judgment for plaintiff, defendant appeals.

---

[1] *Naylor et, al.* v. *Floor*, 51 Utah, 382, 170 Pac. 971.

Appeal from Third District

AFFIRMED.

*Wm. E. Rydalch,* of Salt Lake City, for appellant.

*George A. Udall,* of Salt Lake City, for respondent.

THURMAN, J.

This action was commenced in the district court of Juab County and afterwards transferred to the district court of Salt Lake county by stipulation.

The plaintiff seeks to recover damages for certain alleged trespasses by defendant's cattle on plaintiff's property situated in Juab and Tooele counties. The trespasses are alleged in four causes of action: (1) Upon grain growing on plaintiff's land in Juab county from July 1 to September 1, 1917, damages, $175; (2) upon certain stacks of ripened wheat on plaintiff's land in Tooele county during the month of September, 1917, $106.80; (3) upon certain stacks of ripened wheat upon other lands of plaintiff in Tooele county in September, 1917, $249.20; (4) upon a crop of potatoes growing upon plaintiff's land in Juab county during September of the same year, $40.

Defendant, by its answer to each cause of action, admits its corporate capacity, and that it was the owner of certain cattle of the number and description alleged in the complaint, but denies the remaining allegations thereof. The jury to whom the causes were tried found for plaintiff on the first cause of action $148.75; on the second, $60.44; on the third, $188.02; and on the fourth, $15.

Defendant appeals from the judgment entered, and relies on certain alleged errors, the assignment of which covers 13 pages of the printed abstract. Many of the alleged errors do not indicate, prima facie, the point of appellant's objection, nor does the argument thereon, in the opinion of the court, disclose sufficient merit in the errors alleged to justify special consideration.

In 1917 plaintiff was in possession of and farming two

tracts of land—one in Juab county, upon which he had grow-
ing wheat and potatoes, the other in Tooele county, upon
which he had raised, harvested, and stacked several stacks of
wheat. The land in Juab county was claimed as a homestead
entry, while the land in Tooele county was held under a lease
from one T. L. Foote.

The testimony of plaintiff and his witnesses as to the first
and fourth causes of action tends to show that during the
months of July and August, 1917, while plaintiff's wheat
was growing on the homestead land in Juab county, and dur-
ing the month of September of the same year, while his po-
tatoes were growing thereon, numerous cattle of defendant
roamed at large over said land, eating and destroying the
aforesaid crops, so that when the same were harvested the
result indicated that plaintiff had sustained substantial
damages.

Plaintiff's evidence also tends to show that upon the leased
land in Tooele county, in 1917, he raised and stacked several
stacks of ripened wheat, and that during the month of Sep-
tember defendant's cattle trespassed upon the same and ate
and destroyed large quantities thereof, by means of which
plaintiff sustained considerable damages. These are the dam-
ages alleged in the second and third causes of action.

The defendant's witnesses testified to the effect that during
the times covered by the complaint cattle and horses of other
persons roamed at large upon the premises in question, and
that if plaintiff sustained any damage through loss of crops
by trespassing animals the damage was caused by animals
other than those belonging to defendant. Every controverted
question relating to these issues was fully submitted to the
jury by appropriate instructions. The court instructed the
jury that the burden was on the plaintiff to prove by a pre-
ponderance of the evidence that the damage alleged in each
cause of action was done by defendant's cattle, and that, if
the jury believed that some of the damage was done by stock
owned by others, then defendant would be liable only for
such portion of the damage as was caused by its cattle. The
findings of the jury as to each cause of action, under the in-

structions given, were clearly sustained by the evidence.

It is contended, however, that the court erred in the admission of certain evidence over defendant's objection as to the value of crops destroyed. When the plaintiff was asked the market value of wheat and potatoes at the place where they were raised, he was permitted to state what they sold for in Eureka, which was the nearest market.

It must be conceded that such is not, technically, the character of evidence that is ordinarily required to establish market value where the question of market value is a seriously controverted fact; but, on the other hand, it must be admitted, that such evidence tends to prove market value, and where the value is not controverted, as in the instant case, we are of the opinion it was sufficient to sustain the verdict and judgment entered thereon.

Appellant also assigns as error instructions 8 and 9, as given by the court. The instructions relate to the measure of damages, and are here quoted at length:

"(8) The measure of damages as to the first and fourth alleged causes of action is the difference between the market value of the crops before the alleged damages were done in each instance and the market value of the crops after the alleged damages were done. This may be computed by taking into account the market value that the entire crop would have had at maturity if no injury thereto had been done and deducting therefrom the entire market value of the crop at maturity in its alleged injured state. The difference, if any, will enable you to calculate the amount of damage, and from this amount, so found, if you find from a preponderance of all the evidence in the case, you must deduct its proportion of the cost of bringing the crop to maturity and of harvesting and marketing the same.

"(9) You are further instructed that the measure of damages to harvested crops that have been severed and gathered into stacks is the difference between the market value of the whole amount of said crops in said stacks before the damage was done and the amount that, with reasonable diligence, could have been saved from said stacks after the damage was done. To ascertain that difference you may consider what the entire crop would have brought in the open market at market place and in the market season had the same been allowed to progress so far without being damaged, and from that amount you should deduct what was saved, or what could have been saved with reasonable diligence

and marketed, and from the difference deduct the proportionate amount of the costs and expenses incident to the threshing and marketing."

The eighth instruction, above quoted, was directed by the court specifically to the first and fourth causes of action, in which the growing crops were injured before maturity. The instruction is in strict harmony with the rule laid down in *Naylor et al.* v. *Floor*, 51 Utah, 382, 170 Pac. 971, which is the last expression of this court as to this character of damages.

The ninth instruction was directed to the second and third causes of action, in which the ripened wheat was damaged after it was harvested and stacked. We find no error in that instruction.

Both instructions were specially adapted to the particular conditions to which they were applied. The evidence as to the deductions that should be made on account of harvesting, threshing, and conveying to market was ample, in the opinion of the court, and was no doubt considered by the jurors in arriving at their verdict.

The valid requests made by defendant were covered by instructions given by the court. The remaining requests were properly refused.

The judgment of the trial court is affirmed.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.